# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 17-05463-GW(PJWx) | Date | October 12, 2017 |
|---|---|---|---|
| Title | *Product Association Technologies LLC v. Clique Media Group* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | | |
|---|---|---|---|
| Javier Gonzalez | Katie Thibodeaux | | |
| Deputy Clerk | Court Reporter / Recorder | | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Jay B. Johnson | Christopher Broderick |
| | Yasser M. El-Gamel |

**PROCEEDINGS:** **DEFENDANT CLIQUE MEDIA GROUP'S RULE 12(B)(6) MOTION TO DISMISS FOR LACK OF PATENTABLE SUBJECT MATTER [30]**

The Court's Tentative Ruling is circulated and attached hereto. Court hears oral argument. For reason stated on the record, Defendant's Motion is TAKEN UNDER SUBMISSION. Court to issue its ruling.

|  | : | 14 |
|---|---|---|
|  | Initials of Preparer | JG |

<u>*Product Association Technologies LLC v. Clique Media Group*</u>, Case No. 2:17-cv-05463-GW-(PJWx)
Tentative Ruling on Motion to Dismiss for Lack of Patentable Subject Matter

I. <u>Background</u>

On July 24, 2017, Plaintiff Product Association Technologies LLC commenced this action for patent infringement against Defendant Clique Media Group in the Eastern District of Texas. *See* Docket No. 1 ("Complaint"). The case was subsequently transferred to this Court. Docket No. 17. Plaintiff claims that Defendant infringes U.S. Patent No. 6,154,738 ("the '738 Patent") entitled "Methods and Apparatus for Disseminating Product Information via the Internet Using Universal Product Codes." The '738 Patent was filed on May 21, 1999 and issued November 28, 2000. Plaintiff alleges that Defendant infringes "at least Claim 1" of the '738 Patent. *See* Complaint; Docket No. 37 ("Joint 26(f) Report") at 2. Plaintiff has not otherwise identified what claims it accuses Defendant of infringing.

In lieu of filing an answer, on August 3, 2017, Defendant moved to dismiss the Complaint on the grounds that the claims of the '738 Patent are not directed to patentable subject matter under 35 U.S.C. § 101 ("Motion"). Docket No. 30-1. On September 21, 2017, Plaintiff filed an Opposition. Docket No. 35. On September 28, 2017, Defendant filed a Reply. Docket No. 36.

II. <u>Legal Standard</u>

*A. Motion to Dismiss*

A complaint may be dismissed for failure to state a claim upon which relief can be granted for one of two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal theory. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). *See also Mendiondo v. Centinela Hosp. Med. Ctr.,* 521 F.3d 1097, 1104 (9th Cir. 2008) ("Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."). A motion to dismiss should be granted if the complaint does not proffer enough facts to state a claim for relief that is plausible on its face. *See Twombly*, 550 U.S. at 558-59, 570; *see also William O. Gilley Enters., Inc. v. Atl. Richfield Co.*, 588 F.3d 659, 667 (9th Cir. 2009) (confirming that *Twombly* pleading requirements "apply in all civil cases"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).

In deciding a 12(b)(6) motion, the court is limited to: (1) the well-plead allegations on the face of the complaint (including documents attached thereto), (2) matters which are subject to proper judicial notice, and (3) other extrinsic documents when "the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not

1

explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). The court must construe the complaint in the light most favorable to the plaintiff and must accept all factual allegations as true. *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). The court must also accept as true all reasonable inferences to be drawn from the material allegations in the complaint. *See Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247-48 (9th Cir. 2013); *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). Conclusory statements, unlike proper factual allegations, are not entitled to a presumption of truth. *See Iqbal*, 556 U.S. at 681; *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

### B. Patentable Subject Matter Under 35 U.S.C. § 101

35 U.S.C. § 101 "defines the subject matter that may be patented under the Patent Act." *Bilski v. Kappos*, 561 U.S. 593, 601 (2010). It provides:

> Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

*Id.* "In choosing such expansive terms . . . modified by the comprehensive 'any,' Congress plainly contemplated that the patent laws would be given wide scope" "to ensure that 'ingenuity should receive a liberal encouragement.'" *Id.* (quoting *Diamond v. Chakrabarty*, 447 U.S. 303, 308 (quoting 5 Writings of Thomas Jefferson 75-76 (H. Washington ed. 1871)) (some internal quotation marks omitted).

The "wide scope" of patent eligibility is not unlimited. Instead, the Supreme Court has invented or discovered "three specific exceptions to § 101's broad patent-eligibility principles: 'laws of nature, physical phenomena, and abstract ideas.'" *Bilski*, 561 U.S. at 601 (quoting *Chakrabarty*, 447 U.S. at 309).

In *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66 (2012), the Supreme Court "set forth a framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). That framework is as follows:

> First, we determine whether the claims at issue are directed to one of those patent-ineligible concepts. If so, we then ask, "[w]hat else is there in the claims before us?" To answer that question, we consider the elements of each claim both individually and "as an ordered combination" to determine whether the additional elements "transform the nature of the claim" into a patent-eligible application. We have described step two of this analysis as a search for an "'inventive concept'"—*i.e.*, an element or combination of elements that is "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself."

*Id.* at 2355 (citations omitted).

While the boundaries of the judicial exceptions remain subject to further development, the Supreme Court has clearly stated the policy underlying those exceptions: avoiding patents that "too broadly preempt the use of a natural law [or abstract idea]." *Mayo*, 132 S. Ct. at 1294. Thus, patent law should "not inhibit further discovery by improperly tying up the future use of laws of nature [or abstract ideas]." *Id*. at 1301.

The question in the abstract idea context is thus whether there are other *ways* to use the abstract idea in the same field. If so, the Supreme Court has expressly encouraged others to find those other ways, without being held back by patents that preempt the whole concept. *Mayo*, 566 U.S. at 72-73 (citing *O'Reilly v. Morse*, 56 U.S. 62, 113 (1853)); *Alice*, 134 S. Ct. at 3258 (noting "the pre-emption concern that undergirds our § 101 jurisprudence.").

Concomitantly, courts must be wary of facile arguments that a patent preempts all applications of an idea. It may often be easier for an infringer to argue that a patent fails § 101 than to figure out a different way to implement an idea, especially a way that is "less complicated – less liable to get out of order – less expensive in construction, and in its operation." *O'Reilly*, 56 U.S. at 113. But the patent law does not privilege the leisure of an infringer over the labors of an inventor. *Eclipse IP LLC v. McKinley Equip. Corp.*, No. SACV 14-154-GW(AJWx), 2014 WL 4407592, at *5 (C.D. Cal. Sept. 4, 2014). Patents should not be casually discarded as failing § 101 just because the infringer would prefer to avoid the work required to develop non-infringing uses of the abstract idea.

### III. Analysis

#### A. The Motion is Ripe

In its Opposition, Plaintiff asserts that it is "rare that a patent infringement suit can be dismissed at the pleading stage for lack of patentable subject matter . . . because every issued patent is presumed to have been issued properly, absent clear and convincing evidence to the contrary." Docket No. 35 at 5 (quoting *Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1338-39 (Fed. Cir. 2013), *vacated sub nom by Wildtangent, Inc. v. Ultramercial, LLC*, 573 U.S. 2870, 134 S. Ct. 2870 (2014)). Despite this proclamation, the Federal Circuit has repeatedly sanctioned grants of motions to dismiss for lack of patentable subject matter. *See, e.g.*, *Coffelt v. NVIDIA Corp.*, 680 Fed. App'x. 1010, 1011 (Fed. Cir. 2017); *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1092 (Fed. Cir. 2016); *Internet Patents Corp. v. Active Network, Inc. et al.*, 790 F.3d 1343, 1345 (Fed. Cir. 2015); *OIP Tech. Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015).

More importantly, neither party points to claim construction disputes or facts outside of the intrinsic record (as alleged in the Complaint) to support their arguments about the patentability (or lack thereof) of the '738 Patent. Rather, both parties focus their arguments on the face of the claims and excerpts from the patent specification. Patentability is ultimately a question of law. *Mortgage Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1325 (Fed. Cir. 2016). Although this question may be "rife" with underlying issues of fact, (Docket No. 35 at 5 (quoting *Ultramercial*, 722 F.3d at 1338-39)), no such facts have been presented for the Court's consideration. Upon the Court's review of the parties' arguments and the contents of

3

'738 Patent, the Court finds that neither claim construction nor further development of the factual record are required before addressing § 101 as to at least some of the claims of the '738 Patent.

### B. Claims Analyzed by This Order

As an initial matter, the Court notes that Plaintiff has identified only Claim 1 of the '738 Patent as allegedly infringed by Defendant. *See* Complaint; Joint 26(f) Report at 2. Claim 1 recites:

> 1. The method for disseminating product information via the Internet which comprises, in combination, the steps of:
>> establishing a cross-referencing resource connected to the Internet which includes a database containing a plurality of cross-references, each of said cross-references specifying the correspondence between a group of one or more universal product code values and the Internet address of a source of information which describes the products designated by said group of one or more code values,
>> transmitting via the Internet a Web page containing at least one hyperlink including a reference to separately stored information, said reference including a particular universal product code value that uniquely designates a selected product,
>> employing a Web browser program to receive said Web page and display said Web page to a user,
>> further employing said Web browser to respond to the activation of said hyperlink by said user by transmitting a first request message to said cross-referencing resource, said first request message containing at least a portion of said particular universal product code value,
>> processing said first request message at said cross-referencing resource by referring to said database to identify the particular Internet address which corresponds to said particular universal product code value and returning a redirection message to said Web browser which contains said particular Internet address;
>> employing said Web browser to automatically respond to said redirection message by transmitting a second request message to said particular Internet address;
>> employing a Web server connected to the Internet at said particular Internet address to respond to said second request message by returning product information describing said selected product to said Web browser, and
>> employing said Web browser program to automatically display said product information from said Web server to said user.

Defendant requests, however, that the Court invalidate all of the claims of the '738 Patent for lack of patentable subject matter. Motion at 1. Defendant asserts that Claim 1 is representative

of the remaining claims:

> Claims 2-4 of the '738 Patent each recite the exact same method as Claim 1 – the only difference being the use of differing generic computer functions to implement the method. Likewise, Claims 5-14 merely claim generic devices to perform this patent-ineligible method – devices that the '738 Patent itself describes as 'conventional.'

Motion at 19. Plaintiff does not respond to these assertions anywhere in its Opposition. Indeed, throughout Plaintiff's brief, Plaintiff refers generally to "[t]he claims of the patent-in-suit." *See, e.g.*, Opposition at 1 ("it will be necessary to determine whether the claims of the '738 Patent are directed toward an abstract idea") ("Defendant's Motion should be denied because the claims of the '738 Patent are not directed to an 'abstract idea'"), 4 ("all of the factors in the *Alice* decision, and the analysis under Section 101, point to the patent eligibility of the claims of the patent-in-suit"), 11 ("the claims are rooted in computer technology and improvements to a technological process"), 13 ("[t]he '738 claims as a whole are directed to an improvement of a technological process"), 17 ("[a]s in *DDR Holdings*, the claims in the instant case are distinct from the routine operation of hyperlinks"). The only claim that Plaintiff references by number in its Opposition is Claim 1. *See id.* at 2-4, 20-24.

For purposes of § 101 analysis, the Court may choose to evaluate a "representative claim." A claim can serve as a representative claim if the other "represented claims" are "substantially similar and linked to the same abstract idea." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348-49 (Fed. Cir. 2014).

As stated, Plaintiff does not appear to dispute that for purposes of this Motion, Claim 1 may serve as a representative claim for all of the claims of the '738 Patent. The Court's review of the '738 Patent claims leads it to conclude, however, that Claim 1 may only serve as a representative claim for Claims 1-4 at this juncture. Claims 2-4 depend from Claim 1 and merely add information relating to the nature of the universal product codes saved in the database or used to retrieve information from the database. Claim 5 is an independent apparatus claim from which the remaining claims (Claims 6-14) either directly or indirectly depend. In some aspects, Claim 5 is substantially similar to Claim 1: it recites an apparatus for "delivering product information via the Internet." Claim 5 recites three computers that perform various functions that could arguably be linked to the method steps recited by Claim 1. The third computer recited in Claim 5, however, comprises "means for retrieving," "means for identifying," "means . . . for transmitting," and "means for retrieving and displaying." In other words, at least four limitations in Claim 5 invoke § 112(6) and require construction as means plus function terms. Neither party, however, has proposed corresponding structure in the specification for these terms. It is possible that the patentability of Claim 5 could be influenced by the construction of these terms, but neither party has addressed this issue even at a high level. The Court declines to undertake a claim construction analysis at this time without evidence or argument submitted by either of the parties.

Accordingly, the Court will analyze Claim 1 as representative of Claims 1-4 for purposes of this Motion.

### *C. Claims 1-4 Are Directed To an Abstract Idea*

Defendant argues that the claims are directed to the abstract idea of "locating and sending product information in response to a request for such information by an online shopper." Motion at 7. According to Defendant, this is "the exact type of abstract idea disallowed by *Alice*." *Id.* at 8. Defendant emphasizes its argument that all of the steps of the claim could be performed by humans in a non-computer context. *Id.* at 9-10.

Plaintiff responds that: 1) the claims are rooted in computer technology and improvements to a technological process (Opposition at 11-18); and 2) Defendant has summarized the claimed invention at an improperly high level of abstraction, (*Id.* at 14 − "Defendant's characterization of the '738 Patent is a gross overgeneralization" − 16, 19). Plaintiff analogizes the '738 Patent's claims to the claims in both *DDR Holdings* and *Enfish*, two Federal Circuit cases where the asserted claims were found to be drawn to patentable subject matter. *Id.* at 14 (citing *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016)), 16 (citing *DDR Holdings, LLC v. Hotels.com*, 773 F.3d 1245, 1266 (Fed. Cir. 2014)). Contrary to Defendant's characterization of the claims, Plaintiff characterizes the claimed invention as:

> directed to an improvement of an existing technology and provide for automatic retrieval of product information in the context of Internet shopping. This is accomplished through a cross-referencing database based on universal product codes and a series of automatically generated messages that first reach out to the database and, based on the results at the cross-referencing database, then reach out to a separate Internet address to retrieve the product information.

Opposition at 15.

Defendant replies by distinguishing the claims of the '738 Patent from the claims of *DDR Holdings* and *Enfish*. Reply at 1-2 ("While the *DDR* and *Enfish* patents provided technological solutions to technological problems described in the patents' specifications, the '738 Patent merely purports to solve the problem of information availability to humans − a problem that existed long before the Internet"). Defendant again emphasizes its argument that the '738 Patent is directed to solving the problem of "availability of information, not any particular technological problem with the structure or function of prior art databases, networking protocols, or other technological elements." Reply at 3.

The parties appear to have a dispute over the meaning of the final limitation of Claim 1: "employing said Web browser program to automatically display said product information from said Web server to said user." Plaintiff asserts that the other steps of Claim 1 are performed "in order to return product information to the user at the original Web page." Opposition at 17. Meanwhile, Defendant asserts that, after the other steps of Claim 1 are performed, there is "redirection of an Internet user to a merchant's web page." Reply at 1. For purposes of this Motion only, the Court resolves this dispute in favor of Plaintiff. The Court ultimately finds, however, that this is a distinction without a difference.

Defendant correctly points out that all of the recited steps in Claim 1 could be performed

by the "age-old fixture of information kiosks in a mall": a shopper approaches an information kiosk requesting product information, and in response, the person operating the kiosk refers to a catalogue cross referencing to various stores in the mall and product information, contacts a store to see if the operator may convey particular product information to the shopper, and subsequently conveys that information back to the shopper. Motion at 10. Plaintiff argues that this is an "overgeneralization" of the claim, but does not describe how the kiosk example specifically is overgeneralized. Opposition at 19. The crux of Plaintiff's argument appears to be that Claim 1 is not drawn to an abstract idea because the claimed series of messages and the interaction with the cross-referencing resource before returning product information to the user is automated. *Id.* at 15-16 ("the automated nature of message requests and redirect messaging based on universal product codes and a cross-referencing database demonstrates that the focus of the claims is on the specific asserted improvement in computer capabilities, not on a process that qualifies as an abstract idea."). Simply automating a process in this context, however, is not enough to take it out of the realm of the abstract and into the realm of "computer capabilities." *FairWarning IP*, 839 F.3d at 1092 (claim for "detecting improper access of a patient's protected health information" that included the limitation of "provid[ing] notification if the event has occurred" unpatentable); *OIP Techs.*, 788 F.3d at 1363, *cert. denied*, 136 S. Ct. 701, (2015) ("relying on a computer to perform routine tasks more quickly or more accurately is insufficient to render a claim patent eligible."). Automating these steps, particularly through the sending and receiving of messages between a web page and the cross-referencing database, is simply a "benefit of generic computing technology" that is insufficient to make Claim 1 any less abstract. *Return Mail, Inc. v. U.S. Postal Serv.*, 868 F.3d 1350, 1368 (Fed. Cir. 2017) (claim unpatentable that was drawn to collecting information about undeliverable mail items from a sender and, depending on a determination of whether the sender wanted a corrected address, electronically transferring information to the sender or posting return mail records on a network).

Claim 1 is also functional in nature rather than focused on a particular means by which the various functions are performed. *See* Reply at 8-9. Claim 1 essentially recites the steps of: establishing a cross-referencing resource, transmitting and displaying a web page with a hyperlink to a user, responding to activation of the hyperlink with messages to the cross-referencing resource, identifying desired information in the cross-referencing resource, sending a message to the web page with the desired information, sending the desired information back to the web browser, and using the web browser to display the information. Claim 1 does not submit a particular technological way of establishing the cross-referencing resource, identifying desired information, sending messages, or displaying data that would improve the functioning of a computer. Claim 1 is thus distinguishable from both *Enfish* and *DDR Holdings*.

In *Enfish*, for instance, the claims were "specifically directed to a *self-referential* table for a computer database." *Enfish*, 822 F.3d at 1337 ("the claims are not simply directed to *any* form of storing tabular data, but instead are specifically directed to a *self-referential* table for a computer database."). The claims were thus directed to "an improvement in the functioning of a computer." *Id.* at 1338. Claim 1 of the '738 Patent is not drawn to "a specific type of data structure designed to improve the way a computer stores and retrieves data in memory" like the claims in *Enfish*. *Id.* at 1339. There is nothing so unique about the cross-referencing resource claimed by the '738 Patent, and Plaintiff does not attempt to make such an argument. Instead, Claim 1 recites that the cross-referencing resource:

7

> includes a database containing a plurality of cross-references, each of said cross-references specifying the correspondence between a group of one or more universal product code values and the Internet address of a source of information which describes the products designated by said group of one or more code values.

In other words, the cross-referencing resource is a simple database linking known universal product codes to identified product websites. "[T]he focus of the claims is not on . . . an improvement in computers as tools, but on certain independently abstract ideas that use computers as tools." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016).

While Plaintiff generally relies on *Enfish*, its heavier emphasis and comparison is to *DDR Holdings*. *See, e.g.*, Opposition at 3-4. *DDR Holdings*, however, is also readily distinguishable. In *DDR Holdings*, the claims and specification were focused on the computer-specific problem that an Internet user would be "lured away" from a host website and taken to a third-party merchant's website when the user clicked on the merchant's advertisement. *DDR Holdings*, 773 F.3d at 1248. The claims thus referred to maintaining the "look and feel" of the host web page even when a user clicked on a third-party merchant web page, creating a "dynamically constructed" "composite web page." *Id.* at 1249. Even assuming for purposes of this Motion that the final step of Claim 1 does not transport the user to a different web page, Claim 1 does not recite any limitations akin to the "look and feel" requirement in *DDR Holdings*. Likewise, the '738 Patent specification does not refer to the Internet-specific problem of a user being "lured away" to another website. Instead, the '738 Patent's focus is on maintaining up-to-date product information and making that information easy to locate. *See* '738 Patent at 1:43-53. The problem of access to up-to-date data, however, is a problem that existed long before the advent of the Internet. And, as the Federal Circuit has found on more than one occasion, collecting information, analyzing information, and presenting the results of those processes are abstract endeavors. *See, e.g.*, *FairWarning IP*, 839 F.3d at 1094; *Elec. Power Grp.*, 830 F.3d at 1352; *Return Mail*, 868 F.3d at 1368.

Because Claims 1-4 are drawn to the abstract idea of storing product information in a database and identifying and displaying particular product information to a user in response to a request from the user, the Court turns to step 2 of the § 101 analysis.

### D. Claims 1-4 Do Not Recite an Inventive Concept

Defendant argues that "Claim 1 contains no elements either individually or as an ordered combination, that transform the claim into a patent-eligible application." Motion at 11 (citing *Alice*, 134 S. Ct. at 2359). Defendant then walks through each step of Claim 1 and argues that the steps are drawn to well-understood, routine, and conventional activities. *Id.* at 11-16. Defendant further emphasizes that taken as a whole or considered as a particular arrangement of elements, the claims do not disclose an inventive concept. *Id.* at 16-17.

Plaintiff responds that the '738 Patent recites "non-generic and inventive limitations."

8

Opposition at 20.  Plaintiff makes the following assertions:

- The database itself has an "inventive structure" because it "cross-references universal product codes values with Internet addresses (separate from the initiating Web page) that contain product information for products associated with the codes" (Opposition at 21);
- There is an interrelationship between the cross-referencing database and other elements of the claim that is non-generic (*id.*);
- Defendant improperly boils down the element of "transmitting via the Internet a Web page containing at least one hyperlink including a reference to separately stored information, said reference including a particular universal product code value that uniquely designates a selected product . . ." to "simply a step of transmitting information via the Internet . . ." (*id.* at 21-22);
- The claim "includes transmitting a first request message to a cross-referencing database where the message includes at least a portion of a universal product code value," a step that is not conventional because a conventional hyperlink would "take a user from a hypertext file or document to another location or file" (*id.* at 22-23);

Plaintiff argues that Defendant's strategy of improperly "divid[ing] and generaliz[ing]" the claim limitations continues for the remaining elements of the claims, and that Defendant improperly takes the elements one at a time rather than considering whether the elements together transform the abstract idea.  *Id.* at 23-24.

Despite Plaintiff's arguments about Defendant's improper characterizations and generalizations of the claim elements, Plaintiff fails to point the Court to any concrete examples of *how* the claimed steps, whether taken individually or as a whole, recite more than routine, conventional, and well-understood elements.  While Claim 1 is certainly verbose, a conventional step is still a conventional step.  *Cf. OIP Techs.*, 788 F.3d at 1362-63, *cert. denied*, 136 S. Ct. 701 (2015) ("[T]hat the claims do not pre-empt all price optimization or may be limited to [a particular] setting [does] not make them any less abstract").  The only limitation where Plaintiff arguably identifies a non-conventional element is the claim limitation "further employing said Web browser to respond to the activation of said hyperlink by said user by transmitting a first request message to said cross-referencing resource, said first request message containing at least a portion of said particular universal product code value."  According to Plaintiff's Opposition, conventional practice would be to "take a user from a hypertext file or document to another location or file" when the user clicks on a hyperlink.  Opposition at 22.  Plaintiff, however, does not provide any citation to the '738 Patent, the Complaint, or a person of skill in the art for this assertion.  Indeed, the patent specification explains various known options for "product code cross-referencing," including the Lightweight Directory Access Protocol ("LDAP"), a previously developed protocol that allows "directory information to be created and managed as well as queried."  '738 Patent at 20:34-35; *see also id.* at 20:42-43 ("The use of LDAP to provide directory lookup services via the Internet is further detailed in the literature").  The '738 Patent itself thus acknowledges the conventional nature of this claim element.

As the '738 Patent specification acknowledges, it relies on "two existing and highly successful technologies: the Internet and the universal product code system."  '738 Patent at 3:64-4:1.  The elements of Claim 1, considered both element-by-element and as a whole, do not

provide 1) technological improvements or 2) non-conventional processes for employing these two highly successful technologies:

| **Element of Claim 1** | **Analysis** |
|---|---|
| The method for disseminating product information via the Internet which comprises, in combination, the steps of: | The preamble merely makes clear that computer implementation, and specifically the "existing and highly successful technolog[y]" of the Internet, is required. '738 Patent at 3:64-4:1. "The claims' invocation of the Internet [] adds no inventive concept." *Ultramercial*, 772 F.3d at 716. |
| establishing a cross-referencing resource connected to the Internet which includes a database containing a plurality of cross-references, each of said cross-references specifying the correspondence between a group of one or more universal product code values and the Internet address of a source of information which describes the products designated by said group of one or more code values, | This claim limitation is simply drawn to a database that contains particular pieces of known information. '738 Patent at 4:6-7 ("The universal product code system is in widespread use."). Indeed, the specification explains that the individual manufacturers can supply the requisite information. *Id.* at 6:10-15. "[L]imiting claims to the particular technological environment" of universal product code data is insufficient to transform the claims into patent-eligible applications. *Elec. Power Grp.*, 830 F.3d at 1352. |
| transmitting via the Internet a Web page containing at least one hyperlink including a reference to separately stored information, said reference including a particular universal product code value that uniquely designates a selected product, | This claim limitation 1) uses the Internet, 2) to transmit a web page referencing a universal product code. In other words, this element uses known Internet technology to display a web page with a hyperlink containing known information. *See* '738 Patent at 3:64-4:1 (internet is known); *id.* at 4:6-7 ("The universal product code system is in widespread use."); *Ultramercial*, 772 F.3d at 716 ("Narrowing the abstract idea of using advertising as a currency to the Internet is an 'attempt[] to limit the use' of the abstract idea 'to a particular technological environment,' which is insufficient to save a claim."). |
| employing a Web browser program to receive said Web page and display said Web page to a user, | This claim limitation uses the "existing and highly successful technolog[y]" of the Internet to receive and display a web page to a user. '738 Patent at 3:64-4:1; *see* |

10

| | |
|---|---|
| | *Ultramercial*, 772 F.3d at 716. |
| further employing said Web browser to respond to the activation of said hyperlink by said user by transmitting a first request message to said cross-referencing resource, said first request message containing at least a portion of said particular universal product code value, | This claim limitation may be met by methods for creating, managing, and querying directory information, including methods disclosed in the patent specification as being known in the art. '738 Patent at 20:30-51 (LDAP); *id.* at 21:8-22 (Cross-referencing with Domain Name Servers); *Ultramercial*, 772 F.3d at 716. |
| processing said first request message at said cross-referencing resource by referring to said database to identify the particular Internet address which corresponds to said particular universal product code value and returning a redirection message to said Web browser which contains said particular Internet address; | This claim limitation refers to identifying relevant information in a database in response to a query and sending a message to the web browser with that information. Sending an electronic message over the Internet is a well-understood, routine, activity previously known to the industry. *OIP Techs.*, 788 F.3d at 1363, *cert. denied*, 136 S. Ct. 701 (2015) |
| employing said Web browser to automatically respond to said redirection message by transmitting a second request message to said particular Internet address; | This claim limitation uses the "existing and highly successful technolog[y]" of the Internet to transmit a message to an Internet address of interest. '738 Patent at 3:64-4:1. The fact that this step is done automatically is insufficient to transform the claims into patentable subject matter. *FairWarning IP*, 839 F.3d at 1094; *OIP Techs.*, 788 F.3d at 1363, *cert. denied*, 136 S. Ct. 701 (2015) (sending a message is a routine and conventional step). |
| employing a Web server connected to the Internet at said particular Internet address to respond to said second request message by returning product information describing said selected product to said Web browser, and | This claim limitation uses the "existing and highly successful technolog[y]" of the Internet to return product information to a web browser in response to a message. *OIP Techs.*, 788 F.3d at 1363, *cert. denied*, 136 S. Ct. 701 (2015). |
| employing said Web browser program | This claim limitation the "existing and highly |

11

| | |
|---|---|
| to automatically display said product information from said Web server to said user. | successful technolog[y]" of the Internet to display product information. "[S]electing information, by content or source, for collection, analysis, and display does nothing significant to differentiate a process from ordinary mental processes." *Elec. Power Grp.*, 830 F.3d at 1355. |

Likewise, Plaintiff has not drawn the Court's attention to, and the Court cannot find, anything unique or non-conventional about the combination of elements that transforms the claim into patentable subject matter. Accordingly, Claims 1-4 are drawn to patent-ineligible subject matter.

### *E. Adequacy of Complaint as to Claims 5-14*

Plaintiff's Complaint solely refers to Claim 1 of the '738 Patent. Under the circumstances, the Court finds this reference is insufficient to support an allegation that Defendant infringes one or more of Claims 5-14. The Court has determined that Claim 1 is invalid as unpatentable. Without reference to one of the other claims of the '738 Patent in the Complaint, there is insufficient factual information to state a plausible claim for relief.

While in most cases a court granting a Motion to Dismiss pursuant to Rule 12(b)(6) will allow the plaintiff the opportunity to amend its complaint to address these types of pleading deficiencies, the Court recognizes that in this case: (1) Plaintiff may have never intended to assert Claims 5-14; and (2) Plaintiff may desire a final judgment as to Claims 1-4 so that the question of those claims' validity may be directly appealed. Under these circumstances and given the early stage of this litigation, the Court finds that the appropriate course of action is to simply dismiss the case.

## IV. Conclusion

For the foregoing reasons, the Court would GRANT the Motion and DISMISS Plaintiff's Complaint because Claims 1-4 of the '738 Patent fail to satisfy 35 U.S.C. § 101.